**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**


COMPASS CONSTRUCTION, *et al.,*

      Plaintiffs,

   vs.                          Civil Action 2:12-cv-186
                                    Magistrate Judge King

INDIANA/KENTUCKY/OHIO REGIONAL
COUNCIL OF CARPENTERS OF THE
UNITED BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA, *et al.,*

      Defendants.


### OPINION AND ORDER

      This is an action for damages under Section 303 of the Labor
Management Relations Act, 29 U.S.C. § 187, brought by plaintiffs
Compass Construction ("Compass"), The Daimler Group, Inc. ("Daimler"),
and TERiX Computer Services, Inc., ("Terix, Inc.") against defendants
Indiana/Kentucky/Ohio Regional Council of Carpenters of the United
Brotherhood of Carpenters and Joiners of America ("Regional Council"),
the United Brotherhood of Carpenters and Joiners of America, Local 200
("Local 200"), Mark Moen, Doug Reffit, Wesley Osterhout, and Does
1-50.  The *Amended Complaint* alleges unlawful secondary boycott
activities on defendants' part in violation of 29 U.S.C. §
158(b)(4)(A), (B) and the illegal threatening and coercing an employer
to assign particular work to employees of a particular labor
organization in violation of 29 U.S.C. § 158(b)(4)(D).  Plaintiffs
also assert state law claims of defamation, false light invasion of
privacy, and civil conspiracy.

      This matter is before the Court with consent of the parties, 28
U.S.C. § 636(c), for consideration of *Defendants' Fed. R. Civ. P.,*

*Rule 12(b)(1) and 12(b)(6), Motion to Dismiss Plaintiffs' Amended
Complaint* ("*Defendants' Motion to Dismiss*"), Doc. No. 25, and
*Defendants' Fed. R. Civ. P., Rule 26(c)(1), Motion to Stay Discovery*
("*Defendants' Motion to Stay Discovery*"), Doc. No. 26.  For the
reasons that follow, *Defendants' Motion to Dismiss* is **GRANTED** and
*Defendants' Motion to Stay Discovery* is **DENIED as moot**.

I.    **PLAINTIFFS' ALLEGATIONS**

      Plaintiffs' *Amended Complaint* contains the following allegations:

      Regional Council and Local 200 are labor organizations that
represent employees for the purpose of collective bargaining.  *Amended
Complaint*, ¶¶ 10, 11.  Regional Council is engaged in a labor dispute
with Compass because Compass allegedly fails to follow Regional
Council's area standard wages and benefits.  *Id.* at 20, Exhibit 1.
Daimler is a general contractor that subcontracts work to Compass.
*Id.* at 18, 27, 35.

      Beginning in the winter of 2011, Regional Council and/or Local
200 started bannering, handbilling, and sending letters to parties who
either directly contracted with Daimler to do construction work or
were tenants whose landlord contracted with Daimler to do construction
work.  Regional sent one letter to Net Jets Aviation ("Net Jets"), and
engaged in bannering and handbilling outside OhioHealth and Terix,
Inc., premises.

      **The Letter.**  Bridgeway Partners LLC, as Net Jets' landlord,
contracted with Daimler on or about April 2, 2011 to construct
interior tenant improvements and a café within a building being
constructed on Bridgeway Avenue in Columbus, Ohio.  *Id.* at 17.
Daimler then contracted with Compass to install and finish metal
studs, drywall, and an acoustic ceiling in the building.  *Id.* at 18.

2

On or about February 7, 2012, Mark Moen sent a letter on behalf of Regional Council to the CEO of Net Jets. *Id.* at 19. The letter noted that "Daimler often uses subcontractors, including Compass, who fail to follow the Regional Council's area standard wages and benefits and, as such, the Regional Council has a labor dispute with certain subcontractors, including Compass." *Id.* at 19–20. The letter asks the CEO of Net Jets not to use Daimler "so long as their subcontracts do not meet area labor standards." The letter continues as follows:

> We want you to be aware that our public information campaign against the above referenced Subcontractors will unfortunately impact all parties associated with projects where they are employed. That campaign will include highly visible lawful banner displays and distribution of handbills at the jobsite and premises of property owners, developers, general contractors, and other firms involved with projects involving a non-area standard contractor. We certainly prefer to work cooperatively with all involved parties but cannot sit idly by while these entities condone and/or support the non-area standards contractor.
>
> If you agree to comply with the request we have made in this letter, or if our information about a non-area standard contractor being involved with any of your projects is incorrect, please call the undersigned immediately at 888-389-2828. Doing so will provide the greatest protection against your firm becoming publicly involved in this dispute through misunderstanding or error.

*Id.* at 22–23, Exhibit 1.

**The Banners.** I-A Preserve Building LLC, identified as Terix, Inc.'s landlord, contracted with Daimler on or about November 30, 2011 to oversee work being performed within a suite of an office building located on Frantz Road in Dublin, Ohio. *See id.* at 34, 51. Daimler then contracted with Compass to install and finish metal studs, drywall, and an acoustic ceiling in the building. *Id.* at 35. Plaintiffs allege that Regional Council and/or Local 200 "engaged in . . . bannering and handbilling at the Frantz Road project." *Id.* at 36. "The banner read[] 'SHAME ON TERIX COMPUTER' in large bold print. *Id.*

3

at 37, Exhibits 5, 6, and 7. "The phrase 'Labor Dispute'" was "written in smaller letters on either side of the banner." *Id.*

OhioHealth entered into a contract with Daimler on or about August 18, 2011, for Daimler to oversee work being performed on Riverside Methodist Hospital in Columbus, Ohio. *Id.* at 26. Daimler then entered into a contract with Compass to perform renovations on the building. *Id.* at 27. Regional Council and/or Local 200 engaged in bannering at Riverside Methodist Hospital; the "banner read 'SHAME ON OhioHealth' in large bold print" and the "phrase 'Labor Dispute' was written in smaller letters on either side of the banner." *Id.* at 28, 29, Exhibit 2.

**The Handbills.** Plaintiffs allege that Regional Council and/or Local 200 engaged in handbilling at both the Frantz Road project and Riverside Methodist Hospital. *Id.* at 28, 33. Regional Council allegedly continued to engage in bannering and handbilling at the Frantz Road project on at least five occasions after Compass completed the project. *Id.* at 46-47.

The handbills distributed at the Frantz Road project read "SHAME ON Terix Computer For Desecration of the American Way of Life." *Id.* at 38, Exhibit 8. Underneath this phrase was "a picture which depicts a rat eating an American flag." *Id.* "The Handbill further states:

> A rat is a contractor that does not pay all of its employees area standard wages, including either providing or making payments for health care and pension benefits.
>
> Shame on Terix Computer for contributing to erosion of area standards for carpenter craft workers. Compass Construction is performing work for general contractor Daimler Group on the Terix Computer project located at 5450 Frantz Rd., Dublin, OH 43016. Compass does not meet area labor standards for all their carpenter craft workers, including fully paying for family health benefits and pension.
>
> Carpenters Local 200 believes that Terix Computer has an obligation to the community to see that area labor standards

4

> are met for construction work at all their projects, including
> future work. They should not be allowed to insulate themselves
> behind "independent" contractors. For this reason, Local 200
> has a labor dispute with all the companies identified here.

*Id.* at 39. The handbill also "implored the general public to contact
Terix Computer's CEO to 'change the situation.'" *Id.* at 40.

The handbills passed out at Riverside Methodist Hospital were
nearly identical to those distributed at the Frantz Road project, with
the exception of the company name and project address listed on the
handbill. *See id.* at 26-33, Exhibit 3.

## II.  STANDARD

Defendants move to dismiss plaintiffs' *Amended Complaint* for lack
of subject matter jurisdiction pursuant to Rule 12(b)(1) and for
failure to state a claim upon which relief can be granted pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure.  When a motion
to dismiss addresses a court's jurisdiction, a plaintiff bears the
burden of establishing jurisdiction.  *See Mich. S. R.R. Co. v. Branch
& St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th
Cir. 2002).  "Specifically, the plaintiff must show that the complaint
'alleges a claim under federal law, and that the claim is
substantial.'"  *Id.* (quoting *Musson Theatrical, Inc. v. Fed. Express
Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)).  Where, as here, the
motion to dismiss amounts to a facial attack on subject-matter
jurisdiction, a court must take the allegations in the complaint as
true, just as it would with a 12(b)(6) motion to dismiss.  *See Gentek
Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th
Cir. 2007).

A motion to dismiss under Rule 12(b)(6) attacks the legal
sufficiency of the complaint.  *See Roth Steel Prods. v. Sharon Steel
Co.*, 705 F.2d 134, 155 (6th Cir. 1983).  In determining whether

dismissal on this basis is appropriate, a complaint must be construed
in the light most favorable to the plaintiff, and all well-pleaded
facts must be accepted as true. *See Bower v. Fed. Express Corp.,* 96
F.3d 200, 203 (6th Cir. 1996); *Misch v. Cmty. Mut. Ins. Co.,* 896 F.
Supp. 734, 738 (S.D. Ohio 1994). The United States Supreme Court has
explained that "once a claim has been stated adequately, it may be
supported by showing any set of facts consistent with the allegations
in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546
(2007). However, a plaintiff's claim for relief "requires more than
labels and conclusions, and a formulaic recitation of the elements of
a cause of action will not do." *Id.* at 555. "Factual allegations
must be enough to raise a right to relief above the speculative
level[.]" *Id.* Accordingly, a complaint must be dismissed if it does
not plead "enough facts to state a claim to relief that is plausible
on its face." *Id.* at 570.

**III. DISCUSSION**

    **A.    Section 303 Claims**

Section 303 of the Labor Management Relations Act ("LMRA")
states: "It shall be unlawful for the purpose of this section only, in
an industry or activity affecting commerce, for any labor organization
to engage in any activity or conduct defined as an unfair labor
practice in section 158(b)(4) of this title." 29 U.S.C. § 187(a).
Section 158(b)(4), which is § 8(b)(4) of the National Labor Relations
Act ("NLRA"), provides in relevant part:

> It shall be an unfair labor practice for a labor organization
> or its agents . . .(ii) to threaten, coerce, or restrain any
> person engaged in commerce or in an industry affecting
> commerce, where in either case an object thereof is--
>
> (A) forcing or requiring any employer or self-employed person
> to join any labor or employer organization or to enter into
> any agreement which is prohibited by subsection (e) of this

6

section;

(B) forcing or requiring any person . . . to cease doing
business with any other person . . .

. . .

(D) forcing or requiring any employer to assign particular
work to employees in a particular labor organization or in a
particular trade, craft, or class rather than to employees in
another labor organization or in another trade, craft, or
class . . . .[1]

## 1. Section 303 claims against Regional Council and Local 200

Section 8(b)(4)(ii), which prohibits secondary boycotts, has a
twofold purpose: "the preservation of the right of labor organizations
to place pressure on employers with whom there is a primary dispute as
well as the protection of neutral employers and employees from the
labor disputes of others." *Int'l Longshoremen's Ass'n v. Allied
Int'l, Inc.*, 456 U.S. 212, 223 n. 20 (1982) (citing *NLRB v. Denver
Bldg. & Constr. Trades Council*, 341 U.S. 675, 692 (1951)). A colorable
claim under Section 8(b)(4)(ii) must satisfy a two part inquiry:
first, the claimant must make a showing of threats, coercion, or
restraints by a labor organization; second, a claimant must establish
a particular proscribed purpose behind the labor organization's
conduct.

The crucial question in the case presently before the Court is
whether the *Amended Complaint* alleges facts sufficient to state a
claim to relief that is plausible on its face. To do so, the actions

---

[1] It is unclear from the *Amended Complaint* whether plaintiffs allege
only a violation of § 8(b)(4)(ii) and not 8(b)(4)(i); however, *Plaintiffs'
Response in Opposition to Defendants' Fed. R. Civ. P. 12(b)(1) and 12(b)(6)
Motion to Dismiss Plaintiffs' Amended Complaint* ("*Plaintiffs' Response in
Opposition*"), Doc. No. 27, states that § 8(b)(4)(ii) is the "pertinent"
section "at issue in this case."

allegedly taken by defendants – *i.e.*, defendants' letter to the CEO of Net Jets, bannering, and handbilling – must amount to threats, coercion, or restraint within the meaning of § 8(b)(4)(ii). A similar question was addressed by the United States Supreme Court in *DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568 (1988).

In *DeBartolo*, a union distributed handbills at shopping mall entrances urging customers not to shop at any of the mall's stores until the mall's owner promised that all mall construction would be performed by contractors paying fair wages. *Id.* at 578. The Court held that peaceful handbilling does not constitute threatening, coercive, or restraining activity violative of § 8(b)(4)(ii)(B), even when the action urges a total consumer boycott of neutral secondary businesses. *Id.* at 587-89. The Court noted that "more than mere persuasion is necessary to prove a violation of § 8(b)(4)(ii)(B): that section requires a showing of threats, coercion, or restraints. Those words . . . are 'nonspecific, indeed vague,' and should be interpreted with 'caution' and not given a 'broad sweep.'" *Id.* at 578 (quoting *NLRB v. Drivers*, 362 U.S. 274, 290 (1960)). The *DeBartolo* Court concluded that there was no "necessity to construe such language to reach the handbills involved in th[e] case. There is no suggestion that the leaflets had any coercive effect on customers of the mall. There was no violence, picketing, or patrolling and only an attempt to persuade customers not to shop in the mall." *Id.* at 578.

Although *DeBartolo* specifically addressed only the distribution of handbills, its reasoning also applies to banners. *See Overstreet v. United Bhd. of Carpenters and Joiners of Am., Local Union No. 1506*, 409 F.3d 1199, 1211-13 (9th Cir. 2005) (affirming denial of

preliminary injunction to bar use of a banner); *Gold v. Mid-Atlantic Reg'l Council of Carpenters*, 407 F. Supp. 2d 719 (D. MD. 2005) (declining to issue a preliminary injunction for failure to demonstrate reasonable cause to believe that a banner violated § 8(b)(4)(ii)(B)); *Benson v. United Bhd. of Carpenters and Joinders of Am., Locals 184 and 1498*, 337 F. Supp. 2d 1275 (D. Utah 2004); *Kohn v. Sw. Reg'l Council of Carpenters*, 289 F. Supp. 2d 1155 (C.D. Ca. 2003); *United Bhd. of Carpenters & Joiners of Am., Local Union No. 1506*, 355 N.L.R.B. No. 159 (N.L.R.B. 2010) (finding that displaying a large stationary banner announcing a "labor dispute" and seeking to elicit "shame" did not threaten, coerce, or restrain a neutral employer under § 8(b)(4)(ii)); *Southwest Reg'l Council of Carpenters*, 355 N.L.R.B. No. 216 (N.L.R.B. 2010) (finding that bannering at locations of secondary employers did not violate § 8(b)(4)(ii)(B) because there was no picketing and the display of banners did not constitute threats, coercion, or restraint). As suggested by *DeBartolo*, the display of a banner violates § 8(b)(4)(ii) only if there is a showing of threats, coercion, or restraints, such as is present by an intimidating line of picketers. *See DeBartolo*, 485 U.S. at 580.

Plaintiffs allege that defendants "were engaged in bannering and handbilling" at numerous locations and times, and plaintiffs describe the banners and leaflets in detail. *Amended Complaint*, ¶¶ 28-47. Similarly, plaintiffs allege that defendants sent a letter to the CEO of Net Jets, and plaintiffs describe the letter in detail. *Id.* at 19-23. The *Amended Complaint* then alleges that these actions "constitute illegal secondary activities," are "[t]hreatening, intimidating and coercing," "unlawful," and violative of 29 U.S.C. § 158(b)(4)(A), (B), (D) and 29 U.S.C. § 187. *Id.* at 50-51, 54, 60.

9

Apart from these conclusory assertions, however, plaintiffs make no factual allegations in the *Amended Complaint* that defendants' use of banners, handbills, or letters constituted a "threat," "restraint," or "coercion" within the meaning of § 8(b)(4)(ii).

Plaintiffs do not allege that agents of Regional Council or Local 200 blocked or prevented customers' ingress or egress from buildings, promoted physical confrontations, or even initiated conversation or physical interaction with anyone. Plaintiffs do not allege that anyone carried signs, chanted, spoke in loud voices, walked or marched in pattern, forced cars to stop, or otherwise even suggested that defendants' actions amounted to picketing. Pictures of the banners, as reflected in Exhibits 2, 5, 6, and 7 of the *Amended Complaint*, show two to three people holding an individual banner along a roadside, away from entrances to buildings. Just as the distribution of handbills at "all four entrances" to a shopping mall did not constitute a secondary boycott in *DeBartolo*, 485 U.S. at 571, the presence of people holding banners cannot, by itself, be a threat, restraint, or coercion in this case.

Plaintiffs also allege that Regional Council continued to engage in bannering and handbilling at the Frantz Road project on at least five occasions after Compass completed the project. *Amended Complaint*, ¶¶ 46-47. Although this allegation may be sufficient to show that Regional Council acted with the objective to force Daimler to cease doing business with Compass or for Terix, Inc., to cease doing business with Daimler, this allegation is not sufficient to show that defendants' conduct constituted a threat, coercion, or restraint. Just as a violation of § 8(b)(4)(ii) requires more than presence, a colorable claim under the statute must also allege more than mere

10

presence.  *See DeBartolo*, 485 U.S. at 571.

Similarly, the letter sent to Net Jets does not rise to the level of a § 8(b)(4)(ii) violation.  In applying *DeBartolo*, the United States Court of Appeals for the Sixth Circuit upheld a union's use of letters, telephone calls, and in-person visits to secondary employers warning that they would be subject to handbilling unless they ceased doing business with a particular company.  *Storer Commc'ns, Inc., v. Nat'l Ass'n of Broad. Emps. & Technicians, AFL-CIO*, 854 F.2d 144, 145-47 (6th Cir. 1988).  Those activities were

> permissible under *DeBartolo* because they merely constituted the union's peaceful warnings that it was about to exercise its rights under § 8(b)(4).  Since the handbilling itself was not proscribed activity, peaceful warnings that handbilling will occur are not unlawful.

*Id.* at 147 (citing *DeBartolo*, 485 U.S. at 579-81).

The letter to which plaintiffs refer asks the CEO of Net Jets to exercise his "managerial discretion to not use Daimler Group as long as their subcontractors do not meet area labor standards and not allow any non-area standard contractors to perform any work on any" Net Jets projects.  *Amended Complaint*, Exhibit 1.

> We want you to be aware that our public information campaign against the above referenced Subcontractors will unfortunately impact all parties associated with projects where they are employed.  That campaign will include highly visible lawful banner displays and distribution of handbills at the jobsite and premises of property owners, developers, general contractors, and other firms involved with projects involving a non-area standard contractor.  We certainly prefer to work cooperatively with all involved parties but cannot sit idly by while these entities condone and/or support the non-area standards contractor.

*Id.*  Like the letters, telephone calls, and in-person visits in *Storer Communications*, the letter referred to by plaintiffs merely warned Net Jets that Regional Council intended to engage in handbilling and bannering activities.  Since those activities are not proscribed by §

11

8(b)(4)(ii), the letter warning that handbilling and bannering would occur is likewise not proscribed. *See Storer Communications, Inc.*, 854 F.2d at 144.

*Plaintiffs' Response in Opposition* cites to *Point Ruston, LLC v. Pac. Nw. Reg'l Council of the United Bhr. of Carpenters and Joiners of Am.*, 2010 U.S. Dist. Lexis 93163 (W.D. WA 2010), for the proposition that *DeBartolo* is inapposite to the facts of this case. Doc. No. 27, at *10-14. The court in *Point Ruston* determined that *DeBartolo* and other cases were distinguishable because "the secondary employer had at least some direct or indirect relationship with the primary employer for which the union had a dispute, or the demonstrations took place at the site of the primary dispute." *Id.* at *15-16. Accordingly, plaintiffs assert that *DeBartolo* is inapplicable because there is no relationship, direct or indirect, between the secondary employers, Terix, Inc., OhioHealth, and Net Jets, and the primary employer, Daimler. *Id.* To the contrary, however, there is an indirect relationship here because the handbilling and bannering all occurred at Compass jobsites. *See Amended Complaint*, ¶¶ 28, 33. Additionally, there is a relationship between OhioHealth and Daimler because OhioHealth contracted directly with Daimler to oversee work being performed on Riverside Methodist Hospital, *id.* at 26; there is a relationship between Net Jets and Daimler because Net Jets' landlord contracted with Daimler to perform tenant improvements on the building Net Jets contracted to occupy, *id.* at 17; and there is a relationship between Terix, Inc., and Daimler because Terix, Inc.'s landlord contracted with Daimler to perform construction work on an office building occupied by Terix, Inc., *id.* at 34, 51. As in *DeBartolo*, there is a relationship between each of the secondary employers and

12

the primary employer with which defendants have a dispute.

Plaintiffs also claim that "[w]hether the Defendants had the requisite objectives and whether its conduct was threatening or coercive so as to constitute violations of the Act are plainly questions concentrated on the merits of Plaintiffs' claims." Doc. No. 27 at 14. However, the fact that their pleading raises issues of fact does not relieve plaintiffs of satisfying the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. In evaluating the sufficiency of a complaint, a court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although this standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). In the case presently before this Court, plaintiffs have not alleged, apart from threadbare, conclusory recitals, that defendants' handbilling, bannering, or letter to Net Jets was accompanied by violence, picketing, patrolling, or that defendants' activity in any way constituted threatening, coercing, or restraining activity violative of § 8(b)(4)(ii) of the NLRA or Section 303 of the LMRA. The alleged activities, even taken as true, simply do not rise to the level of a § 8(b)(4)(ii) violation. *See DeBartolo*, 485 U.S. at 578. Accordingly, *Defendants' Motion to Dismiss* plaintiffs' Section 303 claims against defendants Compass, Daimler,

13

and Terix, Inc. is **GRANTED**.

>       2.      **Section 303 claims against Mark Moen, Doug Reffit,
>               Wesley Osterhout, and Does 1–50**

Section 303 of the LMRA provides that "[i]t shall be unlawful for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice." 29 U.S.C. § 187(a). Section 303 does not create a private cause of action against natural persons. *See Prater v. United Mine Workers of Am., Districts 20 and 23*, 793 F.2d 1201, 1206-07 (11th Cir. 1986). This conclusion is not contested by plaintiffs. *See* Doc. No. 27, at 20. Accordingly, *Defendants' Motion to Dismiss* plaintiffs' Section 303 claims against Mark Moen, Doug Reffit, Wesley Osterhout, and Does 1–50 is **GRANTED**.

**B.      State Law Claims**

Plaintiffs assert state law claims of defamation, false light invasion of privacy, and civil conspiracy. Because the Court dismisses all of plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3). Plaintiffs' remaining state law claims will be dismissed without prejudice.

**IV.     MOTION TO STAY DISCOVERY, DOC. NO. 26**

In light of the foregoing, *Defendants' Motion to Stay Discovery*, Doc. No. 26, is **DENIED as moot**.

**WHEREUPON**, *Defendants' Motion to Dismiss Plaintiffs' Amended Complaint,* Doc. No. 25, is **GRANTED** and *Defendants' Motion to Stay Discovery*, Doc. No. 26, is **DENIED as moot**.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in this action.

14

August 20, 2012                    _____*s/ Norah McCann King*_____
                                        Norah McCann King
                                United States Magistrate Judge